UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO.:  1:24-cv-21295

CHAD REEVES,

     Plaintiff,

vs.

CARNIVAL CORPORATION,
a Panamanian Corporation,

     Defendant.

_____/

## **COMPLAINT**

COMES NOW the Plaintiff, CHAD REEVES, and sues the Defendant, CARNIVAL CORPORATION, a Panamanian corporation, and alleges as follows:

### GENERAL ALLEGATIONS

1. This is an action for damages which exceed Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to *28 USC §1332.*

2. At all times material the Plaintiff, CHAD REEVES, is and was a resident and citizen of the State of Virginia.

3. On October 23, 2023, within six months of Plaintiff's injury, Plaintiff sent formal written notice to Defendant.

4. At all times material, Defendant's shipboard nursing staff that provided care and treatment to CHAD REEVES were nurse employees, or agent of the Defendant, CARNIVAL, and were at all times material acting within the scope and course of their employment or agency

with CARNIVAL.

5. At all times material, Defendant's shipboard doctor or doctors that provided care and treatment to CHAD REEVES were employees or agents of the Defendant, CARNIVAL, as its ship's physicians and were at all times material acting within the scope and course of their employment or agency with CARNIVAL.

6. At all times material, the Defendant, CARNIVAL, was the owner and/or operator of the cruise ship *Carnival Freedom*.

7. On July 8, 2023, the 37-year-old Plaintiff, CHAD REEVES, boarded as a passenger on the *Carnival Freedom*, which was in U.S. territorial waters at Port Canaveral, Florida.

8. Later that day, CHAD REEVES began experiencing symptoms associated with a heart attack. At approximately 6:00 p.m. his sister Toni contacted the medical clinic via the cabin phone and explained that her brother was having a probable heart attack. The operator told her that the medical clinic was closed and she should call back in the morning to get an appointment. She insisted that REEVES had to be seen immediately, at which point the clinic personnel stated that MR. REEVES could be seen if he walked down to Deck O and then began to explain all of the fees for services.

9. MR. REEVES' sister explained that he was not physically able to walk down to the clinic, so the clinic personnel came to the cabin and transported him to the clinic via wheelchair.

10. By 8:00 p.m., when the vessel was still in Florida's territorial waters, MR. REEVES' lab work definitively confirmed a STEMI heart attack. At that point the cruise ship was just north of Port St. Lucie.

2

11.    At 9:00 p.m. MR. REEVES received a thrombolytic Actilyse, a clot buster.

12.    At 10:30 p.m. MR. REEVES was informed that the clot buster did not work.

13.    Thereafter, MR. REEVES' wife and sister pleaded all night to have him flown from the ship immediately "to prevent heart damage."  Their pleas were repeatedly rejected by the physician.  The only option provided was to wait until the vessel docked at Nassau, Bahamas at 10 a.m. Sunday, July 9, 2023.

14.    Off-vessel family members called the Coast Guard because MR. REEVES' wife and sister could not place a phone call from the ship.  The Coast Guard indicated that it would pick up MR. REEVES if the ship contacted the Coast Guard via protocol, but that no report had been made to the Coast Guard.

15.    At 1:30 a.m. on Sunday, July 9, 2023, the Coast Guard called the vessel to talk to the Captain and the doctor.  CARNIVAL's doctor told the Coast Guard that evacuation was not necessary as MR. REEVES was stable and his pain was under control with morphine.

16.    At 1:00 p.m. MR. REEVES disembarked the *Carnival Freedom* and was transported to an airport in Nassau for a jet ICU to fly him to Orlando Osceola Medical Center.

17.    At 4:00 p.m. MR. REEVES arrived at Osceola Medical Center.

18.    At 6:00 p.m. MR. REEVES went to the Osceola Medical Center CATH lab 24 hours after his heart attack.  The catheterization procedure revealed a 100% occlusion of his LAD, and an injection fracture of 25 to 30 percent.

19.    MR. REEVES sustained significant permanent heart damage due to CARNIVAL's refusal to evacuate him from the vessel to get him to a CATH lab sooner.

20.    MR. REEVES' 17 year career as a firefighter/EMT has been placed at risk.

## COUNT I: NEGLIGENT MEDICAL CARE AND TREATMENT VIA EMPLOYEES OR ACTUAL AGENTS

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 20 as though fully set forth herein, and further alleges as follows:

21. The Defendant owed a duty to CHAD REEVES to provide prompt and appropriate medical care upon his presentation to the ship's infirmary on July 8, 2023.

22. The Defendant, CARNIVAL, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

> (a) in failing to properly assess the condition of CHAD REEVES;
>
> (b) in failing to timely diagnose and appropriately treat MR. REEVES;
>
> (c) in failing to order appropriate diagnostic tests to further assess his condition;
>
> (d) in failing to obtain consultations with appropriate specialists;
>
> (e) in failing to properly monitor the patient;
>
> (f) in failing immediately to evacuate the patient from the vessel for appropriate care in a timely manner;
>
> (g) in failing to provide medically appropriate treatment to Mr. Reeves;
>
> (h) in deviating from the standard of care for patients in MR. REEVES' circumstances; and

23. CARNIVAL acknowledged through its hiring and holding out of its medical personnel, including doctors and nurses, that they acted for CARNIVAL.  The doctors and nurses manifested the acceptance of that undertaking by providing care to CARNIVAL's passengers in CARNIVAL's medical center, and CARNIVAL controlled or had the right to control the medical personnel's actions, as more fully set forth *infra* and *supra*.

24. CARNIVAL directly paid the medical personnel for their work in the ship's

medical center.

25.    The medical center was created, owned and operated by CARNIVAL.

26.    CARNIVAL hired and had the right to fire its medical personnel.

27.    As a direct and proximate result of the negligence of the Defendant through its employees/agents, as described above, the Plaintiff has sustained serious permanent physical injuries.

28.    Had CHAD REEVES received the appropriate care and treatment, he more likely than not would not have suffered these permanent injuries.

29.    As a result of the negligence of the Defendant, through its employees/agents as heretofore described, CHAD REEVES has become obligated to pay significant medical bills and other expenses.

30.    The Defendant's negligence proximately caused MR. REEVES' injuries.

WHEREFORE, the Plaintiff, CHAD REEVES, demands judgment against the Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of MR. REEVES, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### COUNT II: NEGLIGENCE (VICARIOUS LIABILITY OF CARNIVAL BASED UPON APPARENT AGENCY)

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 30  as though fully set forth herein, and further alleges as follows:

31.    The Defendant owed a duty to CHAD REEVES to provide prompt and appropriate medical care upon his presentation to the ship's infirmary on July 8, 2023.

32.    The Defendant, CARNIVAL, by and through the acts of its employees or agents,

including medical personnel, was negligent, in one or more of the following ways:

    (a)    in failing to properly assess the condition of CHAD REEVES;

    (b)    in failing to timely diagnose and appropriately treat CHAD REEVES;

    (c)    in failing to order appropriate diagnostic tests to further assess his condition;

    (d)    in failing to obtain consultations with appropriate specialists;

    (e)    in failing to properly monitor the patient;

    (f)    in failing immediately to evacuate the patient from the vessel for appropriate care in a timely manner;

    (g)    (g)    in failing to provide medically appropriate treatment to Mr. Reeves;

    (h)    in deviating from the standard of care for patients in MR. REEVES' circumstances; and

33.    At all times material, the Defendant, CARNIVAL, held out its medical staff, including its doctors and nurses, as its apparent agents who work in CARNIVAL's "medical centers" on the vessel.  The Defendant, CARNIVAL, promotes its medical staff and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel.  That CARNIVAL held out its medical staff as being its direct employees or its actual agents.

34.    That the Defendant, CARNIVAL, promotes the idea that the medical staff who work in its "medical centers" are its apparent agents as part of a marketing tool to induce passengers such as the Plaintiff to cruise on its ships.

35.    That CARNIVAL manifested to the Plaintiff and his family in this case that its medical staff were acting as its apparent agents in various ways, including but not limited to the following:

(a)     the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

(b)     that the "medical centers" are owned and operated by CARNIVAL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

(c)     that the passenger is billed directly by CARNIVAL through the passengers' onboard account, whereas the "medical staff", including the doctor and nurse, are paid salaries by CARNIVAL, to work in the "medical centers"; and

(d)     that CARNIVAL has the right to hire and fire the physicians and nurses.

36.     The medical staff in this case were required by CARNIVAL to wear CARNIVAL uniforms which include name tags, and which display the CARNIVAL name and logo.

37.     Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line.  The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to the Plaintiff herein and his family, that the shipboard physicians  and medical staff work for the benefit of the Defendant. These actions and conduct of the cruise  line include but are not limited to the following:

(a) The Defendant controls cruise line physicians' attire, which includes, at times, a  uniform with epaulettes and stripes similar to other crewmembers;

(b) The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence  to the ship, uniforms, meals, private  furnished  cabins  with  refrigerators, telephones, computers with internet access,  daily housekeeping services, and indemnification and health care;

(c) The Defendant cruise line requires that the ship's physicians sail with the ship;

(d) The Defendant cruise line provides the onboard Medical Center;

(e) The Defendant cruise line allows and requires the ship's physicians to operate and  provide services out of the ship's Medical Center which is provided by the cruise  line and which is equipped by the cruise line;

7

(f) The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard account;

(g) The ship's physicians represented themselves to passengers that they are employees of Defendant, CARNIVAL;

(h) The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

(i) The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships; and

(j) The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

38. The ship's physician is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

39. Both the ship's doctor and the nurses were held out to the passengers by CARNIVAL as members of the ship's crew.

40. The Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

41. The cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

42. Both the ship's doctor and nurses are permitted to eat with the ship's crew.

43. The ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff had no alternative to going to the ship's medical center to be seen for his symptoms.

44. At the time of Plaintiff's illness, the Plaintiff was seen, examined and treated by the ship's nurse and/or physician.

45.     Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

46.     MR. REEVES and his family relied to their detriment on their belief that the physician and nurse were direct employees or actual agents of the Defendant in that MR. REEVES accepted care and treatment from CARNIVAL's nurses and physicians. MR. REEVES would not have accepted that care and treatment had he suspected they were not the agents of CARNIVAL.

47.     As a result of the Plaintiff's reliance upon the ship's medical staff, MR. REEVES was not properly treated and, in fact was provided contra-indicated treatment, such that he collapsed, and that subsequent medical treatment and intervention was untimely.

48.     That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff, CHAD REEVES, demands judgment against the Defendant, CARNIVAL CORP., a Panamanian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of MR. REEVES, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

Dated April 8, 2024.

Todd J. Michaels, Esq.
THE HAGGARD LAW FIRM
*Counsel for Plaintiff*
330 Alhambra Circle
Coral Gables, Florida 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154
Email: tjm@haggardlawfirm.com

jbush@haggardlawfirm.com

BY:  /s/ *Todd J. Michaels*
      TODD J. MICHAELS
      Florida Bar No. 568597

Philip D. Parrish, Esq.
PHILIP D. PARRISH, P.A.
*Counsel for Plaintiff*
7301 S.W. 57 Court, Suite 430
South Miami, Florida 33143
Telephone: (305) 670-5550
Facsimile: (305) 775-5155
Email: phil@parrishappeals.com
      betty@parrishappeals.com

By: */s/ Philip D. Parrish*
      PHILIP D. PARRISH
      Florida Bar No. 541877

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court using CM/ECF on this April 8, 2024.   I also certify that the foregoing document is being served this date on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Todd J. Michaels*
Todd J. Michaels

CASE NO.: 1:24-cv-21295

## **<u>SERVICE LIST</u>**

**Philip D. Parrish, Esquire**
Florida Bar No.: 541877
phil@parrishappeals.com
Philip D. Parrish PA
7301 S.W. 57th Court, Suite 430
Miami, FL 33143
Telephone: 305-670-5550
Facsimile: 305-670-5552
*Counsel for Plaintiff*

**Todd J. Michaels, Esquire**
Florida Bar No.: 565897
tjm@haggardlawfirm.com
The Haggard Law Firm
330 Alhambra Circle
Coral Gables, FL 33134
Telephone: 305-446-5700
Facsimile: 305-446-1154
*Counsel for Plaintiff*