**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:24-cv-21295-RAR

CHAD REEVES,

     Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation,

     Defendants.

_____/

## PLAINTIFF'S OMNIBUS MOTION IN LIMINE

Plaintiff, CHAD REEVES, by and through undersigned counsel, and pursuant to this Court's trial order, hereby moves in limine on the following grounds.

## LEGAL STANDARD

The purpose of a Motion *in Limine* is to allow the trial court to determine the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 41 n.1 (1984). It "gives the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." *Luce*, 469 U.S. at 41. Such a ruling shields both the trier of fact from inadmissible evidence and the moving party from having unfairly prejudicial information disclosed in the presence of the jury. *See* MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 103:8 (8th ed.)

## MEMORANDUM OF LAW APPLICABLE TO THE FIRST THREE MOTIONS IN LIMINE

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  Irrelevant evidence is inadmissible. FED. R.

EVID. 402.  Even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,  or  by considerations of undue delay, waste of time, or needless presentation of cumulate evidence." FED. R. EVID. 403.  The categories of evidence we seek to exclude have great potential to "incite a jury to an irrational decision," and "such irrationality is the primary target of Rule 403." *United States v. Church*, 955 F.2d 688, 702 (11th Cir. 1992) (internal citations omitted).

**I.** **DEFENDANT SHOULD NOT BE PERMITTED TO ELICIT TESTIMONY CONCERNING MR. REEVES' UNRELATED BACK INJURY, HIS TEMPORARY DEPRESSION RELATED TO THAT BACK INJURY, OR ANY ISSUES CONCERNING WHETHER MR. REEVES' GUNS WERE TAKEN AWAY FROM HIM**

This is a maritime claim of medical malpractice brought by a Lynchburg, Virginia firefighter, Chad Reeves, against Carnival Corp.  The malpractice claim arises from the failure of Carnival's medical staff to timely treat an acute STEMI heart attack Mr. Reeves suffered aboard a Carnival vessel.

During his September 2024 deposition defense counsel asked Mr. Reeves about a back injury he sustained in September of 2020 when he was building a barn in his backyard in rural Virginia.  (Exhibit A, Chad Reeves Depo., p. 45-46).  He was diagnosed with a bulging disk.  (*Id.* p. 47).  As a result of that injury, he began to see a therapist, Kimberly Altizer.  (*Id.* p. 49).  The back problem produced anxiety about his career as a fireman.  (*Id.* p. 50).  After speaking with his wife, he entered a short period of therapy, but "everything got better and I was fine."  (*Id.* p. 50-51).

In one of Ms. Altizer's notes, the therapist erroneously wrote that his family took his guns away from him at that time, but Mr. Reeves vehemently denied that that ever occurred.  (*Id.* p. 51).

He has no explanation for why that appears in her notes.  Carnival has not sought to depose the therapist Altizer.

Ms. Altizer did diagnose Mr. Reeves with depression and anxiety and prescribed Lexapro. (*Id.* p. 52).  However, Reeves is no longer taking Lexapro or any other medication related to depression or anxiety.  (*Id.* p. 52).  The last time he saw a therapist was several years ago.  (*Id.* p. 53).

The back injury and related, but abated, depression and anxiety are entirely irrelevant to this action concerning Carnival's failure to timely and properly treat Mr. Reeves' STEMI heart attack in July 2023.  Because the back injury and related temporary depression and anxiety are remote and irrelevant, any mention of them in front of the jury will be highly prejudicial under Federal Rule of Evidence 403.  Accordingly, they should not be referenced at trial.

Additionally, in March 2022 Mr. Reeves experienced a period of excruciating back pain and was diagnosed with cauda equina syndrome.  (p. 57).  That caused him to lose six weeks of work.  (*Id.*)  After four weeks of therapy, he was cleared to return to full duty.  (p. 58).  However, to the best of his recollection he had not seen a physician for any issues in the year prior to taking the cruise.  (p. 60).  Thus, the evidence of that condition is irrelevant.

## II.  <u>DEFENDANT SHOULD NOT BE PERMITTED TO REFERENCE AN EVENT MR. REEVES WAS INVOLVED IN WHERE A DOG WAS SHOT AND KILLED</u>

In July 2021 there is an incident where Mr. Reeves was involved in the killing of an out-of-control dog owned by a "little old lady" that lives down the road from him.  Reeves testified that she didn't get around well and was not in the best of health and was living by herself.  She fell down while walking her dog, who was very protective of her and could be extremely aggressive. (*Id.* p. 54).  When Mr. Reeves pulled over to help her he informed her that he was going to have to

try to subdue her dog and pin it down so that someone else could help her up.  He took a big winter jacket out of his truck and tried to throw it over the dog's head to block it.  In the process the dog attacked him "it got me on my arm and right above my eye."  After his friends helped the elderly women up, he explained to her that he had to be able to get up and get away from the dog that was a very big aggressive dog.  (*Id.* at 54-55).  When he got up to get away from the dog, he pushed it away from him and before the dog attacked him again a friend of his shot and killed the dog.  (*Id.* p. 55).

Evidence of this unfortunate incident would have zero probative value, yet would be immensely prejudicial.  Accordingly, this Court should grant a motion in *limine* with respect to this incident pursuant to Fed. R. Evidence 403.

### III. BECAUSE THERE IS NO LOST WAGE CLAIM THE DEFENDANT SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE OF MR. REEVES SUBSEQUENT EMPLOYMENT RECORDS OF NON-PHYSICIAN ASSESSMENTS

Plaintiff believes that Carnival may intend to introduce testimony or evidence concerning Mr. Reeves continued employment, and the fact that he has been cleared for "normal duties."  Any such evidence is irrelevant because Mr. Reeves is not pursuing a wage claim, and evidence that he has been cleared for "normal duties" is misleading and more prejudicial than probative under Federal Rule of Evidence 403.

During the deposition of Plaintiff's expert cardiologist Dr. Klancke, defense counsel questioned Dr. Klancke about a hearsay "assessment" contained in "athletic training treatment notes" made by an athletic trainer for the Lynchburg Fire Department.  These notes, which are in and of themselves hearsay, are rife with double hearsay.  For instance, defense counsel questioned Dr. Klancke on a hearsay note that "several firefighters present commented on the pt.'s outstanding

performance and said they were unsure whether many people in the department could have done that volume of work without rest." The assessment also notes "he was able to quickly and efficiently complete each task at or above the expectations of Chief Shealy and Captain Mendel." Neither of these gentlemen have been deposed in this case. Therefore, there is no way to transform the hearsay within hearsay into admissible evidence.

Putting aside hearsay concerns, the probative value of non-physician, and particularly non-cardiology physician assessments is limited or nonexistent and the prejudicial effect is significant. Accordingly, these treatment notes and hearsay comments made therein should be excluded under Federal Rule of Evidence 403.

### IV.     DEFENDANT SHOULD NOT BE PERMITTED TO OFFER CUMULATIVE TESTIMONY OF TWO PHYSICIANS

Carnival has retained a cardiologist, Dr. John Setaro, and an emergency room physician, Dr. Nure Khoury, to testify about the care and treatment Reeves received from Carnival physicians and nurses. Dr. Setaro and Dr. Khoury offer repetitive, overlapping opinions concerning the care and treatment rendered by Carnival's medical staff. Both physicians provide the same standard of care testimony. Their testimony is cumulative, and Carnival should be precluded from presenting repetitive medical opinions.

Federal Rule of Evidence 403 provides for the preclusion of the "needless presentation of cumulative evidence." Expert testimony may be needlessly cumulative where there is "substantial overlap" between the areas on which two experts will testify. *Royal Bohemian Association, Inc. v. QBE Insurance Corp.*, 2010 WL 4225947 at *2 (quoting *Price v. Fox Entm't Grp., Inc.*, 499 F.Supp.2d 382, 390 (S.D. N.Y. 2007). This is particularly true with respect to duplicative medical

experts. *See Goldstein v. Centocor*, 2007 WL 61913, at \*2 (S.D. Fla. 2007) (Granting motion in limine to exclude second pulmonologist testimony where credentials were virtually identical).

The Eleventh Circuit has acknowledged that sometimes expert opinions that otherwise meet the *Daubert* admissibility requirements may still be excluded under Rule 403 "if the expert testimony is cumulative or needlessly time consuming." *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). *Cf. Summers v. Carnival Corp.*, 2016 WL 4511446 (S.D. Fla. 2016) (Noting duplicative nature of medical experts, but deferring ruling until time of trial).[1]

The reason that two experts with essentially identical credentials should not be permitted to testify is that it may create the risk that a jury resolve differences in expert opinion by "counting heads" instead of by giving fair consideration to the quality and credibility of each expert's opinions. *Royal Bohemian*, at \*2.

### V.      THE DEFENDANT SHIP PHYSICIANS AND NURSE SHOULD BE PRECLUDED FROM SPECULATING THAT THERE "MUST" HAVE BEEN MORE THAN THREE EKGs PRINTED OUT

During discovery Carnival disclosed three EKG printouts as part of its medical records. These are the **only** EKG printouts contained in Carnival's medical record for Mr. Reeves. When they were produced, they had a handwritten notation for Roman numerals I through III. The medical record confirms that the first EKG strip was printed out prior to 6:57 p.m.; the second was printed out prior to 7:17 p.m. and the third was printed out prior to 8:27 p.m. Carnival concedes that the second EKG confirms that Mr. Reeves was undergoing a STEMI heart attack. However, because the STEMI heart attack was diagnosed prior to 7:17 p.m., Carnival has no excuse for why a thrombolytic (clot buster) was not administered until 9:05 p.m. Accordingly, although there was

---

[1] This Court extended the *Daubert* and dispositive motion deadline to February 7, 2025. (DE 22). Plaintiff will be filing a *Daubert* motion directed to both of Defendant's experts.

absolutely no support for such speculation, Carnival has had its witnesses speculate  -- without any evidence whatsoever -- that there must have been more than three EKGs printed, and that the Roman numerals handwritten on the three EKGs in the medical chart do not necessarily correlate with the timing (7:17 p.m.) for the second EKG of when Carnival physicians diagnosed Mr. Reeves as undergoing a STEMI heart attack.

The first episode of "speculation" occurred at Nurse Sony Thomas' deposition on December 9, 2024.  Nurse Thomas is still employed by Carnival.  (Exhibit B, Thomas Depo., p. 14).  First, it should be noted that Nurse Thomas testified that she had absolutely no independent recollection of this event.  (Exhibit B, Depo, p. 61).  Thus, she was testifying solely from the medical record.  She conceded that she did not remember the EKGs and she did not review the three EKGs.  (Exhibit B, Thomas Depo., p. 11).  During her examination by Plaintiff's counsel she refused to concede simple matters such as when she wrote that an event had been done in the chart by a certain time, the event must have occurred *before* the time it was entered into the chart. (Exhibit B, Depo., p. 29-30).  She vehemently testified that she did not remember if there was a first, second or third EKG done, even though that is what the records that she entered into the medical chart reveal.  (Exhibit B, Depo., p. 35).  Nevertheless, on cross examination she testified that the roman numerals I, II, and III does not coincide with the EKGs' timing.  "It doesn't have any relationship with time."  (Exhibit B, Depo., p. 65).  Notwithstanding the fact that she stated that it was "like a chronology, like a Roman letter," she then stated "it doesn't mean that really its first one, second one, or third one."  (Exhibit B, Depo. p. 65).

Nurse Thomas had no memory of the event.  Dr. Leonards, the physician who ordered and read the EKGs, did not testify to any other possible EKGs.  Then, without any evidence in the record that *more* than three EKG results were *ever* printed out, Nurse Thomas agreed with her own

counsel's leading question that one of the two Carnival physicians (for whose negligence Carnival is currently being sued) "went through all of the EKG strips that were printed and among the multiple pages, picked out this page, this page, and this page for whatever reason?"  She responded "uh-huh."  (Exhibit B, Depo., p. 66).  Question: Is that accurate, is that what happened here? Answer: Yes, I think so.  Like yeah.  (Exhibit B, Depo., p. 66).

Nurse Thomas' speculation has also affected the testimony of Carnival's experts.  For instance, its emergency medicine expert Dr. Nure Khoury testified as follows:

> Q.      Now you, you had also said, I think that there were more than three EKGs first printed.  What is the basis of that?
>
> A.      Just that there is a STEMI occurring, or at least an evolving STEMI.  If it were me treating onboard a ship, I would probably do more than three EKGs.  There's probably malfunction so the machine, etc.  So I'm sure there were numerous EKGs taken.
>
> Q.      So – so you have – other than the fact that if it was you and based on the condition, you would do more than three.  You have no evidence that there were more done; correct?
>
> A.      **I don't – I don't have evidence, but I just can – yeah, I can say that there likely was.**

(Exhibit C, Khoury Depo., p. 147-148).  (Emphasis added).  He also responded to the following direct question:

> Q.      **Do you have any evidence whatsoever that there were more EKG strips printed out which were not retained?**
>
> A.      **No, I don't have any evidence to that.**

(Exhibit C, Khoury Depo., p. 149).  (Emphasis added).

Speculative testimony is prohibited by Federal Rule of Evidence 701(a) which provides that if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one

CASE NO.: 1:24-cv-21295-RAR

that is (a) rationally based on the witness's perception. The Advisory Committee Notes for 1972 state that limitation (a) "is the familiar requirement of first-hand knowledge or observation."

### Rule 7.1 Conference

The undersigned counsel for Plaintiff, Todd Michaels, certifies that he has conferred with counsel for Defendant, Michael Drahos, and Carnival does not agree with the relief requested in this motion with the exception of motion in limine number 2 to which Carnival has no objection.

Respectfully submitted by:

THE HAGGARD LAW FIRM
330 Alhambra Circle, First Floor
Coral Gables, Florida 33134
Telephone: (305) 446-5700
*Co-Counsel for Plaintiff*

By: _____/s/ TODD J. MICHAELS_____
**TODD J. MICHAELS, ESQUIRE**
Florida Bar No.: 568597
**ADAM C. FINKEL, ESQUIRE**
Florida Bar No.: 101505
tjm@haggardlawfirm.com
acf@haggardlawfirm.com
jbush@haggardlawfirm.com

- and -

PHILIP D. PARRISH, P.A.
7301 Southwest 57th Court, Suite 430
Miami, Florida 33143
Telephone: (305) 670-5550
*Co-Counsel for Plaintiff*

By: ___*/s/ Philip D. Parrish*_____
**PHILIP D. PARRISH**
Florida Bar No.: 541877
phil@parrishappeals.com
betty@parrishappeals.com

9

CASE NO.: 1:24-cv-21295-RAR

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this February 7, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this date on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

CASE NO.: 1:24-cv-21295-RAR

**SERVICE LIST**

Michael J. Drahos, Esquire
Florida Bar No. 0617059
W. Cooper Jarnagin, Esquire
Florida Bar No. 117767
Ashley Genoese, Esquire
Florida Bar No. 1019357
GRAYROBINSON PA
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: 561-268-5727
Facsimile: 561-268-5747
Michael.drahos@gray-robinson.com
Cooper.jarnagin@gray-robinson.com
Ashley.genoese@gray-robinson.com
*Counsel for Defendant*

Philip D. Parrish, Esquire
Florida Bar No. 541877
PHILIP D. PARRISH PA
9301 S.W. 57 Court, Suite 430
Miami, Florida 33143
Telephone: 305-670-5550
Facsimile: 305-670-5552
phil@parrishappeals.com
*Co-Counsel for Plaintiff*

Todd J. Michaels, Esquire
Florida Bar No.: 568597
Adam C. Finkel, Esquire
Florida Bar No.: 101505
THE HAGGARD LAW FIRM
330 Alhambra Circle
Coral Gables, Florida 33134
Tel: 305-446-5700
Fax: 305-446-1154
Primary: TJM@haggardlawfirm.com
Primary : ACF@haggardlawfirm.com
Secondary: Jbush@haggardlawfirm.com
*Co-Counsel for Plaintiff*

11