Exhibit "B"

KIM A. KLANCKE, MD FACC
290 OAK DRIVE
ORMOND BEACH, FLORIDA 32176

SUPPLEMENTAL CARDIOVASCULAR and INTERNAL MEDICINE REPORT

RE: CHAD REEVES (DOB: 10/28/1985

To whom it may concern:

I have been asked clarify portions of the report I generated on August 20th regarding Mr. Reeves. I will expand on the diagnostic nature of the initial EKG and its role in subsequent management of his acute coronary syndrome (ACS). The second clarification is regarding the future medical needs that stem specifically from the delay in appropriate reperfusion therapy.

In my initial report, I indicated that I believed the first EKG done on 7/8/2023 at about 19:00 was "diagnostic" of an acute anterior wall ST segment elevation myocardial infarction (STEMI) in the setting of typical, protracted chest pain. That EKG shows hyper-acute T wave changes, reciprocal ST segment depression in the inferior leads and when allowing for the S wave there is ST segment elevation. That EKG can not possibly be construed as normal in a 36-year-old patient. Even if there is some confusion about the initial EKG abnormalities, the procedure is to repeat the study in 15-30 minutes to look for serial changes. In this case the EKG if repeated would likely show the text book pattern of anterior STEMI as it did when eventually repeated at about 20:00.

The diagnosis of ACS with protracted ischemic chest pain was obvious within minutes of his presentation to the ship's clinic. At 19:00 a transfer to a PCI capable facility should be a number one priority but supportive therapy in the interim is appropriate. Immediate therapy includes chewed aspirin, full anticoagulation with an antithrombotic agent and sublingual nitroglycerine. The antithrombotic agent can be Lovenox if given for at least 48 hours as 1 mg/kg sub que every 12 hours along with an acute bolus of 30 mg to achieve immediate anticoagulation. The nitroglycerin is given as 0.4 mg sl every 5 minutes for up to 3 doses if the ischemic pain is ongoing. If the ischemic pain persists after initial therapy, IV nitroglycerine is used. Chest pain ongoing more than 30 minutes results in the patient going to the cath lab for emergency percutaneous coronary intervention (PCI) regardless of the type of ACS. The diagnosis of STEMI was clear at 19:00 but by about 20:00 the STEMI is unequivocal by EKG and the ischemic pain was ongoing. Thrombolytic therapy should be given immediately once the STEMI is recognized if transfer to a PCI facility is expected to take longer than 2 hours. All these therapies are more effective given early in the clinical course. All the therapy provided on the ship was either subtherapeutic or delayed. All the scientific data indicates adequate, early therapy provides much better outcomes. At 20:00 the transfer should have been in progress for an hour and remains emergent. Giving the thrombolytic does not interrupt the ongoing transfer to a PCI facility. The plan remains a "Drip and

Ship" approach with the "Ship" meaning emergency transfer and the "Drip" being appropriate IV fibrinolysis.

Mr. Reeves was clinically unstable and a cardiac medical emergency for the entire time he was under the care of the ships medical staff.  Any ACS patient with more than 30 minutes of refractory or ongoing ischemic pain is considered medically unstable. The pain is a marker of living heart muscle tissue that is dying from a lack of blood flow. The pain only stops once the muscle has adequate blood flow restored or is dead. It is a race against time to restore flow to any heart muscle that is potentially viable as dead muscle becomes unfunctional scar tissue and does not regenerate.  Mr. Reeves had many hours of ongoing chest pain while held on the ship and this reflects ongoing hear muscle death with a huge window of opportunity to limit the damage to his heart. It also represents a marker of ongoing ability to help his long-term condition if blood flow to the ischemic muscle is restored. To have blood flow restored he needed earlier, appropriate therapy on the ship and emergent transfer to a facility that could provide therapy beyond supportive care.

If Mr. Reeves had received appropriate guideline directed medical therapy (GDMT) on the ship and timely transfer to a PCI capable medical facility, the injury to his heart would be significantly reduced and his cardiovascular outlook improved. Despite being held aboard the ship for 17 hours, he was still having chest pain at transfer and did benefit from reperfusion of his LAD coronary artery. The benefit would be substantially greater with earlier reperfusion. He has had some improved left ventricular function since his PCI procedure on 7/9/23. The last cardiac assessment I have was done by Dr. Junpaparp on 9/20/23. At that time, Dr. Junpaparp reports personally reviewing the echocardiogram done that day and it showed an ejection fraction of 30%-35% with a possible apical thrombus. Mr. Reeves was already on Jardiance and Entresto for HFrEF Stage C1. He was started on Eliquis for the thrombus and some post infarction paroxysmal atrial fibrillation. These 3 medications have a combined retail cost of about $2,000/month They would not be needed if Mr. Reeves had earlier reperfusion and reduced infarct size resulting in Stage B heart failure. Mr. Reeves will likely need an ICD in the future. HFrEF is a progressive condition and at the age of 36 he has long time frame to progress. If his EF stays at 35% or less there is a primary prevention indication for ICD placement.  HFrEF is almost always progressive over time and based on his age, he has 25 or 30 years heart transplant and LVAD therapies are real considerations. There is no data set of patients that tells us what percentage of patients with advanced ischemic cardiomyopathies and HFrEF end up with a cardiac transplant but over a 30-year span it is likely over 50%. All these therapies discussed above would likely be avoided had Mr. Reeves received standard therapy and emergency transfer aboard the cruise ship.

The opinions expressed above are to a reasonable degree of medical certainty. The opinions are guideline driven and are based on Mr. Reeves clinical presentation along with my training and experience. The opinions are based on the records I have to date.

KIM A. KLANCKE, MD FACC