UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21295-RAR

CHAD REEVES,

       Plaintiff,

v.

CARNIVAL CORPORATION
a Panamanian Corporation,

       Defendant.

_____/

### DEFENDANT CARNIVAL CORPORATION'S RESPONSE TO PLAINTIFF'S OMNIBUS MOTION IN LIMINE [DE 34]

Defendant, CARNIVAL CORPORATION, by and through its undersigned counsel, hereby provides this Response to Plaintiff's Omnibus Motion in Limine [DE 34] and states as follows:

### INTRODUCTION

This is a maritime medical malpractice matter arising from an incident that occurred aboard the *Carnival Freedom*, on July 8, 2023. [DE 1, ¶7] Plaintiff contends that the shipboard medical staff aboard the *Freedom* deviated from acceptable care standards during their treatment of his cardiac emergency by failing to properly assess, timely diagnose, and appropriately treat his condition. [Id. at ¶ 22]. Additionally, Plaintiff also contends the shipboard medical staff was negligent in failing to obtain consultations with appropriate specialists and immediately evacuate him from the vessel for appropriate care in a timely manner. [Id.] Defendant disagrees and contends that the ship's medical staff saved Plaintiff's life with timely and prudent decision making and treatment.

**LEGAL STANDARD**

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds. Penny v. Royal Caribbean Cruises, Ltd., 2023 WL 5977973 (S.D. Fla. Sept. 14, 2023) *quoting* United States v. Gonzalez, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).  The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. Id.  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.  In re Seroquel Prods. Liab. Litig., 2009 WL 260989 at *1 (M.D. Fla. Feb 4, 2009).  Likewise, [i]n light of the preliminary or preemptive nature of motions *in limine*, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited." Holder v. Anderson, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018).

**I.   TESTIMONY CONCERNING MR. REEVES' BACK INJURY, HIS PRIOR HISTORY OF DEPRESSION, OR ANY ISSUES CONCERNING WHETHER HIS GUNS WERE TAKEN AWAY FROM HIM BY HIS FAMILY**

Plaintiff is seeking compensatory damages in the case for mental anguish, aggravation of a disease or physical defect, and loss of capacity for the enjoyment of life sustained in the past and reasonably expected to be sustained in the future.  See DE 29-2.  Additionally, Plaintiff is also seeking compensatory damages for loss of services incurred in the past and reasonably expected to be incurred in the future. Id.  Despite this, Plaintiff contends that Defendant should be precluded from offering any evidence concerning his prior physical health and/or limitations, or the fact that he has a pre-existing history of depression that was purportedly of such severity that his family feared for his safety.  [See DE 34] Plaintiff has clearly placed his past, present and future mental

and emotional state into question in this case by contending that the injuries he sustained have caused him to lose the capacity to enjoy life and/or suffer mental anguish.  Therefore, Defendant should be afforded the opportunity inquire about his past history of depression, including the degree and effect on his ability to enjoy life.  Similarly, to the extent Plaintiff intends to testify at trial that he can no longer perform certain household services due to the injuries he sustained as a consequence of the subject incident, then Defendant should be permitted to question him about prior injuries and what extent, if any, those injuries also limited his ability to perform the same or similar services as he is seeking compensation for in this case.  Thus, Plaintiff's contention that these issues are irrelevant and should therefore be excluded at trial is without merit. See e.g. Smith v. Carnival Corp., No. 22-CV-22853, 2023 WL 8370478, at *5 (S.D. Fla. Dec. 4, 2023)(denying Plaintiff's Motion in *Limine* as to evidence of Plaintiff's prior injuries and medical condition).

To the extent Plaintiff contends inquiry into these matters is unduly prejudicial, Rule 403 allows a trial court to exclude evidence that is probative, but [it] is an extraordinary remedy which should be used sparingly, and the balance should be struck in favor of admissibility." Id; *citing* Aycock, 769 F.3d at 1069-70 (*citing* U.S. v. King, 713 F.2d 627, 631 (11th Cir. 1983)).  In *Ramirez v. Carnival Corp.*, the plaintiff claimed she sustained damages that include "a traumatic brain injury leading to post traumatic headaches and dizziness, anxiety, neck pain, back pain, shoulder pain, and extensive physical therapy and suffered pain therefrom, and sustained mental anguish, disability and the inability to lead a normal life." Ramirez v. Carnival Corp., No. 22-CV-21202, 2023 WL 3318723, at *3 (S.D. Fla. May 9, 2023). In denying a similar motion raised by the plaintiff to the one before this Court, the Southern District found that plaintiff's damage claims implicated her preexisting injuries and conditions, which were relevant to prove pain and mental anguish. Id; *citing* Santana v. Carnival Corp., No. 09-CV-23113, 2011 WL 13220283, at *6 (S.D.

Fla. Sept. 7, 2011) ("any preexisting injuries that Plaintiff had before her accident from this case are certainly relevant ... concerning damages and preexisting conditions."); Johnson v. Carnival Corp., 2021 WL 1379209, at *10 (S.D. Fla. 2021); Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069-70 (11th Cir. 2014) ("The defendant's ability to present alternate causes is of paramount importance in allowing for an adequate defense.").

Ultimately, Plaintiff's argument is premature as Defendant should be afforded an opportunity to lay a proper predicate before summarily denying its opportunity to inquire into such topics at trial. "[I]f evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." Roland Corp. v. inMusic Brands, Inc., No. 17-CV-22405, 2022 WL 22907227, at *1 (S.D. Fla. Aug. 16, 2022)(Louis, J.); Stewart v. Hooters of Am., Inc., No. 8:04-cv-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (*cited with approval* by Powers v. Target Corp., 19-CV-60922, 2020 WL 1986968, at *4 (S.D. Fla. Apr. 27, 2020)). *See* Roland Corp. v. inMusic Brands, Inc., No. 17-CV-22405, 2022 WL 22907227, at *4 (S.D. Fla. Aug. 16, 2022)(Louis, J.)(denying without prejudice Plaintiff's Fifth Motion in *Limine* "sought to exclude a hypothetical before it came to pass and was prematurely raised") (*citing* Lilienthal v. Aspen Am. Ins. Co., 20-80641-CIV, 2021 WL 7366536, at *1 (S.D. Fla. June 9, 2021) ("The Court does not issue advisory opinions, and it is difficult to rule in a vacuum without having the opportunity to see the proffered evidence or testimony in perspective with other evidence in the trial.")).  Bryant v. Walmart Inc., No. 1:22-CV-22246-JLK, 2023 WL 9472173, at *2 (S.D. Fla. Dec. 12, 2023)(denying Motion in Limine as premature and noting "should Plaintiff introduce such evidence at trial, and Defendant objects, the Court will then rule on Defendant's objection at that instance, as is routine at trial.")

**II.     REFERENCE TO AN EVENT MR. REEVES WAS INVOLVED IN WHERE A DOG WAS SHOT AND KILLED**

As referenced in Plaintiff's Rule 7.1 Certification, Defendant has no intention of raising this issue at trial.

**III.     MR. REEVES SUBSEQUENT EMPLOYMENT RECORDS OF NON-PHYSICIAN ASSESSMENTS**

Plaintiff next argues that Defendant should be precluded from presenting any evidence concerning records that summarize his performance during athletic training sessions, or the fact that he has been cleared to return to work because it is "misleading" and more prejudicial than probative.  In furtherance, Plaintiff also seems to suggest that Defendant should not be able to use this information to rebut his damage claims in this case because the documents were generated by an athletic trainer at his place of employment (the Lynchburg Fire Department) and he is not pursuing a wage loss claim.  Plaintiff also argues that the documents are hearsay.

As a threshold matter, Plaintiff failed to attach any of the subject athletic training records to his Motion, rendering the pending challenge deficient on its face.  See Button v. Royal Caribbean, No.12-CV-23624-UU, 2013 U.S. Dist. LEXIS 189409 (S.D. Fla. July 22, 2013)("However, as the instant Motion and Response do not attach any of the medical records discussed therein, a sufficient record does not exist at present for the Court to rule on any particular disagreement between the parties over the admissibility of plaintiff's medical records.").  Nevertheless, by way of background, the subject records were generated by John Wise, an athletic trainer tasked by the Lynchburg Fire Department to assist Plaintiff in his post-cardiac recovery and ultimately determine his suitability to return to work as a full duty firefighter.  Mr. Wise ultimately cleared Plaintiff to return to work in March of 2024, and he has been back to full duty ever since without any difficulty.  [See DE-34-1, deposition of Chad Reeves, PG. 35 LN 8-16]

Defendant's cardiology expert, Dr. John Setaro, relied upon these records to opine that Plaintiff's physical capabilities and eventual return to work as a full duty firefighter without any difficulty demonstrates a "good outcome" following an otherwise significant cardiac event. Dr. Setaro's assessment of Plaintiff's physical capabilities is intended to rebut the opinion of Plaintiff's cardiology expert, Dr. Kim Klancke, who contends that earlier administration of t-PA and/or delivery to a cardiac catheterization lab would have improved his long-term prognosis. It is well recognized under Rule 703 that an expert may rely upon hearsay (or any other inadmissible evidence) to support his or her conclusions. See Fed.R.Evid. 703; *see also* Burgess v. Royal Caribbean Cruises, Ltd., 672 F.Supp. 3d 1239 (May 1, 2023); Ward v. Carnival Corp., No. 17-CV-24628, 2019 WL 1228063 (S.D. Fla. Mar. 14, 2019)

Meanwhile, Plaintiff provides no basis for the accusation that the athletic training records are "misleading." Moreover, it is utterly absurd to suggest that records demonstrating Plaintiff's physical capabilities (or suitability to return to work as a full duty firefighter) after the subject heart attack are somehow "more prejudicial than probative" in a case that is entirely centered upon the contention that improper medical care rendered by the ship's medical staff caused him to suffer permanent personal injury. Equally absurd is the suggestion that Plaintiff's decision not to pursue a wage loss claim somehow renders the records irrelevant or inadmissible simply because they were generated by an athletic trainer retained by the Lynchburg Fire Department. Notably, in addition to admitting that he has returned to fully duty work since March of 2024 "without any difficulty," Plaintiff also admits that he does not currently suffer from *any* physical limitations. [See Id. at PG. 116 LN 13-18] Thus, the athletic training records are clearly not "misleading," nor can there by any plausible argument that they are "more prejudicial than probative." To the

contrary, Plaintiff is seeking to conceal the information contained in these records from the jury because they directly refute numerous aspects of Dr. Klancke's causation theories in this case.

Although only casually referenced in the Motion without any support, to the extent Plaintiff intends to challenge the reliability of the athletic training records by suggesting they are less credible because they were generated by a "non-physician" athletic trainer, such an argument goes to the weight of the evidence, not the admissibility. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th Cir. 2003). Similarly, any hearsay objections that may arise from these records should be deferred until trial after Defendant has an opportunity to lay a proper predicate. For example, the athletic training records offer a subjective report taken during the session as to how Plaintiff himself purportedly described his state of health on each particular day, which is not hearsay. See Fed. R. Evid. 801(d). Ultimately, Plaintiff has failed to establish that evidence of his physical capabilities as documented in athletic training records is "clearly inadmissible on all potential grounds." United States v. Gonzalez, 718 F.Supp. 2d 1341, 1345 (S.D. Fla. 2010). Therefore, the Motion in Limine should be denied.

## IV.      CUMULATIVE TESTIMONY OF TWO PHYSICIANS

Plaintiff seeks to limit the opinions of Defendant's two medical experts, Dr. Nure Khoury and Dr. John Setaro, on the basis that they offer "repetitive, overlapping opinions concerning the care and treatment rendered by Carnival's medical staff." Notably, Plaintiff makes this boilerplate assertion without any specificity whatsoever, and the suggestion that the two doctors have "essentially identical credentials" is not only unsupported in the Motion, but could not be further from reality. [See Defendant's Expert Witness Disclosure attached hereto as Composite Ex. A] Dr. Nure Khoury is as an expert in maritime medicine and shipboard administration. Having previously served as Carnival's Fleet Medical Director, Crew Medical Manager, and a senior

shipboard physician himself, Dr. Khoury's role in the case is to opine on the standard of care for maritime medicine. He will address issues raised by the Plaintiff concerning the clinical management in the ship's medical center from the initial presentation through his eventual disembark from the vessel (including when, how and why to communicate to the ship's bridge about patient care in the medical center), and he will also opine on logistical issues that were involved during treatment, particularly, why Plaintiff was not a clinical candidate for an emergency medical evacuation at sea.

Meanwhile, Dr. Setaro is a board-certified interventional cardiologist who will focus upon the cardiac issues involved. In particular, Dr. Setaro intends to testify that the ship physicians' interpretation of EKG images was correct and that the eventual diagnosis of a ST elevated myocardial infarction (STEMI) was appropriately made. Moreover, he will address Plaintiff's criticism as to the timing (and effect) of tissue plasminogen activator (t-PA) medication that was administered by the ship physicians. Thus, while both physicians are supportive of the care rendered, each will be offering opinions from entirely different perspectives. See *e.g.*, Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2012 WL 12844732, at *1 (S.D. Fla. Apr. 18, 2012) (finding that two experts who would testify as to the design and manufacture of a chair was not cumulative before because the experts have different areas of expertise); *see also* Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp., No. 10-21511-CIV, 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010)("[T]estimony on the same topic by different experts . . . is not needlessly cumulative where the experts will testify from different professional perspectives").

Even assuming, *arguendo*, that Plaintiff could introduce any support for the position that the experts overlap, the challenge is again premature and Defendant would be unduly prejudiced if not afforded the opportunity to lay a proper predicate for each of its experts proposed opinions

at the time of trial.  By comparison, in <u>Summers v. Carnival Corp.</u>, No. 13-23932-CIV, 2016 WL 4511446 (S.D. Fla. April 14, 2016) (a case cited by Plaintiff in the instant Motion), the plaintiff intended to introduce three experts who the Court agreed after reviewing their respective affidavits, "<u>offered virtually identical opinions</u>" (emphasis added).  Id. at *1.  However, in ultimately denying the defendant's motion to strike their proposed cumulative testimony, the Court found the challenge to be premature, explaining:

> "At trial plaintiff may choose to not elicit testimony from each expert that addresses the full scope of their affidavits, thereby avoid cumulative evidence.  If so, defendant's concerns may not materialize.  It is worth noting that the general nature of the relief sought by defendant, to strike and/or limit in some unspecified way the testimony of the experts, illustrates the inability of the Court, at this stage, to determine that a portion of plaintiff's experts' testimony should be excluded under Rule 403.  Id. at *2

*See also* <u>Bodner v. Royal Caribbean Cruises, Ltd.</u>, 2018 WL 2471215 (S.D. Fla. April 10, 2018); <u>Doyle v. Graske</u>, 2008 WL 824275, at *1 (D. Neb. Mar. 20, 2008)("The court cannot assess the nature of evidence as cumulative at this [motion in limine] state of the proceedings."); <u>Jenifer v. Fleming, Ingram & Floyd, P.C.</u>, 2008 WL 637633 at *3 (S.D. Ga. Mar. 7, 2008)("presiding judge would be in the best position to determine whether the testimony…would be unduly prejudicial and/or cumulative.").

## V.    SHIP PHYSICIAN AND NURSE TESTIMONY REGARDING EKG PRINT OUTS

Finally, Plaintiff argues that the shipboard doctors or nurses involved in the subject care should be precluded from testifying at trial about the total number of print outs generated from EKG testing performed during the night in question.   In order to put this particular dispute into proper context for the Court, some initial clarifications are required.  First and foremost, Defendant does not agree with the representations made in Plaintiff's Motion that the three EKG strips

produced in the case were printed at 6:57 PM, 7:17 PM and 8:27 PM. In fact, Defendant contends that Plaintiff's interpretation defies logic as even a cursory review of the three print outs indicates that EKG I was printed on 9:39 AM, EKG II was printed at 10:43 AM, and EKG III was printed at 11:13 AM. [See EKG print outs attached hereto as Composite Ex. B] Both parties agree that since Plaintiff did not present to the medical center until approximately 6:30 PM on July 8, 2023, the time stamps on the EKG strips are clearly not accurate. However, under Plaintiff's interpretation of the records, in order for EKG I to have been printed at 6:57 PM and EKG II to have been printed at 7:17 PM, a total time of twenty (20) minutes would obviously have needed to elapse between EKG I and EKG II. However, this interpretation cannot be correct because the time stamps on the EKG strips clearly demonstrate that sixty-four minutes (64) elapsed between the time EKG I was printed (9:39 AM) and EKG II (10:43 AM) was printed. Therefore, EKG II could not possibly have been performed at 7:17 PM as Plaintiff contends.

More importantly, Defendant does not agree that "the second EKG confirms that Mr. Reeves was undergoing a STEMI heart attack" at 7:17 PM and that Defendant has "no excuse" for why t-PA was not administered until 9:05 PM. To be clear, both ship physicians (Dr. Brent Leonards and Dr. Reddy Desai) and Dr. Setaro contend that the <u>print out that contains the handwritten Roman Numeral II</u> (ie "EKG II") confirms evidence of a STEMI heart attack. Dr. Leonards is unsure what time the document labeled "EKG II" was printed, and as a consequence, cannot say specifically what time the STEMI was diagnosed. However, Dr. Desai contends "EKG II" was conducted at the time the diagnosis was made between 7:45-8:15 PM. [See deposition of Dr. Reddy Desai attached hereto as Composite Ex. C at PG 36 LN 6-25] Again, although the gap in the time stamps between EKG I and EKG II does not correlate, Plaintiff contends that EKG II must have been printed at 7:17 PM based solely upon an entry written in the medical chart by

Nurse Sonny Thomas, who noted "second EKG was performed reviewed by MD (sic)." [See DE 36-1, PG 32 LN 11-PG 33 LN 23]

Notably, when asked to interpret the meaning of her "second EKG was performed reviewed by MD" note entry in the chart that clearly contrasts with the time stamps recorded on the EKG strips, Nurse Thomas (who does not speak English as her native language) repeatedly testified during her deposition that she could not recall the subject incident and therefore could not explain the discrepancy. [See DE 36-1, deposition of Sonny Thomas at PG 32 LN 11-23, PG 33 LN 15-23].

As a consequence, the exact time the EKG strips were printed on the date in question is unavailable to both sides. However, Plaintiff's interpretation of the discrepancy between the medical chart entries and the time stamps on the EKG strips defies Einstein's theory of relativity. Instead, a more plausible explanation is that Nurse Thomas simply made a mistake in her 7:17 PM note entry and perhaps did not want to admit it at deposition. [See DE 36-1 at PG 45 LN 17-23] Regardless, for purposes of the current Motion, Defendant does not intend to advance an argument or elicit testimony at trial from the ship doctors or nurses that there were multiple EKG strips printed that were not preserved, and therefore requests that Plaintiff's Motion be denied as Moot. However, Defendant does wish to take this opportunity to make clear for the Court that there is a obviously significant dispute between the parties as to the timing of the EKG tests, and more particularly, the timing of Plaintiff's STEMI diagnosis, and will await the opportunity to challenge Plaintiff's interpretation at trial. "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Smith v. Carnival Corp., No. 22-CV-22853, 2023 WL 8370478, at *2 (S.D. Fla. Dec. 4, 2023); Quiet Tech., 326 F.3d at 1341. Accordingly, since Plaintiff is only seeking to prevent argument or testimony at trial that "multiple

EKG strips were printed but not preserved," Defendant is not contesting the Motion on those specific grounds.

## CONCLUSION

Defendant respectfully requests entry of an Order denying Plaintiff's Omnibus Motion in Limine as to Arguments I, III, and IV. Defendant requests entry of an Order denying Plaintiff's Omnibus Motion as being moot relative to Argument II concerning Plaintiff's involvement in the shooting death of a dog (which Defendant has no intention of referencing at trial and did not contest during the Rule 7.1 Conference) and Argument V based upon Defendant's representation herein that it does not intend to advance an argument or elicit testimony at trial that multiple EKG strips were printed but not preserved.

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Michael Drahos*
    Michael J. Drahos
    Florida Bar No. 0617059
    michael.drahos@gray-robinson.com
    W. Cooper Jarnagin
    Florida Bar No. 117767
    cooper.jarnagin@gray-robinson.com
    Ashley Genoese
    Florida Bar No. 1019357
    ashley.genoese@gray-robinson.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/Michael Drahos*

## SERVICE LIST
## CASE NO. 1:24-cv-21295-RAR

Todd J. Michaels, Esq.
Florida Bar No. 568597
tjm@haggardlawfirm.com
Joshua P. Padron, Esq.
Florida Bar No. 1018674
jpp@haggardlawfirm.com
THE HAGGARD LAW FIRM
330 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154

Philip D. Parrish, Esq.
Florida Bar No. 541877
phil@parrishappeals.com
7301 S.W. 57th Court, Suite 430
South Miami, FL 33143
Telephone: (305) 670-5550
Facsimile: (305) 775-5155

*Attorneys for Plaintiff*