**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-21295-RAR**

CHAD REEVES,

       Plaintiff,

v.

CARNIVAL CORPORATION
a Panamanian Corporation,

       Defendant.

_____/

**DEFENDANT CARNIVAL CORPORATION'S REPLY TO PLAINTIFF'S RESPONSE**
**IN OPPOSITION TO MOTION IN LIMINE TO EXCLUDE CERTAIN OPINIONS**
**AND TESTIMONY OF DR. KIM KLANCKE, M.D.**
**PURSUANT TO DAUBERT v. MERRILL DOW PHARM, INC.**

Defendant, CARNIVAL CORPORATION (hereinafter "Defendant"), by and through its undersigned counsel, hereby files this Reply to Plaintiff's Response in Opposition to its Motion in Limine to Exclude Certain Opinions and Testimony of Dr. Kim Klancke, MD at trial pursuant to Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993), and in support thereof would state as follows:

1.      There is absolutely "such thing" as a maritime medical expert. *See curriculum vitae and expert report of Dr. Nure Khoury* [DE 39-A]. Plaintiff's Response attempts to diminish the significance of this specialty practice because he does not have an expert on his roster available to testify to such matters at the upcoming trial. Instead, Plaintiff is attempting to miscast Dr. Klancke into a role he's unfit to play, despite even his own repeat concessions at his deposition. This is a *Daubert* issue, because if the Court opens the gate and allows someone who lacks the experience to obfuscate, it risks the jury's attaching undue deference to the opinion. U.S. v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004).

The Eleventh Circuit has specifically weighed in on the difference between land based medical care versus treatment rendered at sea.  In *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014), the Court specifically clarified this distinction, noting:

> "[c]ruise lines will not always be held to the same standard of care that would guide treatment onshore.  772 F.3d at 1253.  **This is as it should be, since standards of care typically vary among differently situated healthcare providers**.  Id. at 1253-54 (*citing* Jackson v. Pleasant Grove Health Care Ctr.*, 980 F.2d 692, 694 (11th Cir. 1993)(recognizing in nursing home negligence case that, under Alabama law, relevant standard of care governs 'similarly situated health care provider[s]") (emphasis added)

Notably, Florida law specifically mandates a "same specialty" requirement pursuant to Fla. Stat. §766.102(5) during its pre-suit review process.  Davis v. Karr, 264 So.3d 279 (Fla. 5 th DCA 2019 ("same specialty requirement for presuit affidavits of medical experts under Medical Malpractice Act required patient to submit presuit affidavit from specialist of same field…")[1] Although Plaintiff is not required to submit a pre-suit affidavit under general maritime law, this is not to say that any medical expert is qualified to testify to the standard of care in any maritime medical malpractice case, simply because they *hold* an active medical license.[2]  This is exactly what *Daubert* is for, to protect the jury from being seduced by a well-paid, but unqualified expert. For example, in a similar challenge to the one posed before this Court, the Supreme Court of Mississippi in *Cheeks v. Bio-Medical Applications, Inc.* 908 So.2d 117 (Miss. 2005) agreed that a physician who is sufficiently familiar with the standards of a medical specialty may testify as an expert in a medical malpractice action, even though he does not practice the specialty himself. However, the court explained that the expert must be familiar enough with the standard of care to

---

[1] *See. e.g.* Rand v. Hatch, 762 So.2d 1001 (Fla. 3d DCA 2000)(general maritime law does not require pre-suit screening)

[2] Recall Dr. Klancke retired from the active practice of medicine over five years and has not physically treated a patient since 2019. [DE 35, EX C, PG. 21 LN. 3-11]

have "specialized knowledge to assist the trier of fact to understand the evidence." Id. at *121. In determining that a family physician was unfit to testify as to the standard of care of dialysis clinics, the court in *Cheeks* noted, among other deficiencies, that the proposed expert had no specialty training or experience in the field of nephrology, was not a member of the American Medical Association, had never been inside a dialysis clinic, had never participated in a dialysis procedure, had never operated a dialysis machine, and had never monitored a patient while he was receiving dialysis treatment. Id. at *120. Similarly, Dr. Klancke has no personal knowledge, training or experience rendering care to patients at sea. He is not a member of the American College of Emergency Room Physicians (ACEP).[3] He has never been inside a cruiseship medical center. He has never ordered an at sea evacuation, never communicated with a cruiseship doctor about patient care, or spoken to a cruiseship captain or the US Coast Guard for any reason.

Simply put, Dr. Klancke could be the world's foremost expert on cardiology care, but he knows absolutely nothing about rendering care to a cruiseship passenger at sea and should therefore be precluded from offering maritime standard of care opinions. Even Dr. Klancke himself took a moment to qualify the scope of the standard of care he could comment on when questioned by Plaintiff's counsel:

> Q: And your opinion is that the amount of time it took to provide the thrombolytic failed to meet the medical standard of care in the amount of time—or I'm sorry, the dosage of the Heparin failed to meet the standard of care, those opinions remain the same whether or not they could have disembarked him within two or three or four hours, fair?

---

[3] In his Response, Plaintiff argues (without citing any support) that the cruise lines, "agreed that their physicians will follow standard land-based ACEP (American College of Emergency Physicians) protocols. Notably, in recognizing the unique nature of maritime medicine, the American College of Emergency Physicians specifically carved out a subspecialty section for cruiseship medical care. https://www.acep.org/cruise Regardless, not only is Dr. Klancke not a member of ACEP, but he also never even reviewed the ACEP Cruiseship Medicine Section guidelines. [DE 35, EX C. PG 19 LN 16-23]

>    A:    **My standard of care as a cardiologist**, so as a cardiologist if I've been contacted, I would have recommended they do those things differently.
>
>    Q:    **A cardiological standard of care?**
>
>    A:    **Yes.**

See [DE 35, EX C PG. 135, LN 23-PG 136, LN 9.]

2.    If the danger of confusing and misleading the jury wasn't evident as Dr. Klancke was rendering multiple inconsistent positions regarding his capacity as an expert during his deposition, Plaintiff's Response sure does drive home the point of how dangerous it can be to allow a miscast expert to have carte blanche to say whatever he wants to a jury at trial simply because he has a medical degree.[4]  For example, Dr. Klancke testified on multiple different occasions that he is not an expert on medical evacuations at sea and repeatedly admitted that he is unaware of the logistics involved.   At one point, Dr. Klancke even admonished the undersigned for repeatedly seeking clarification, stating that "I told you twenty-five times I don't know" or questioning "why it was so hard to understand" his position on whether he was qualified to opine on at sea medical evacuation.  Additionally, in Plaintiff's Response, he even argues that:

> "Dr. Klancke will not be opining on the actual feasibility of a medical evacuation in this case.  He clearly stated that he could not do so.  Thus, Carnival's motion should be denied on the basis that it mischaracterizes his testimony. **His sole opinion-a medical one-concerning evacuation is that the physicians onboard the vessel should at least have asked the Captain if evacuation was feasible**. (emphasis added)

---

[4] Plaintiff takes a moment to mention that Dr. Klancke is apparently qualified to render standard of care opinions in this case because he testified in <u>Goodloe v. Royal Caribbean Cruises</u>, Case No. 18-cv-21125-CMA.  Aside from boasting about the jury verdict, no other details are provided to this Court as to how Dr. Klancke's unknown testimony in another case, with other facts and other lawyers has anything to do with whether he is fit to testify in this case.

However, it is Plaintiff who is mischaracterizing Dr. Klancke's proposed testimony, not Carnival. Literally on the very next page of Plaintiff's Response, after arguing that Dr. Klancke would only be opining that the shipboard physician should have contacted the Captain about evacuation options, and despite Dr. Klancke himself repeatedly admitting that he knows nothing about at sea medical evacuations, Plaintiff next argues that his "<u>Drip and Ship testimony is well within his wheelhouse.</u>" (emphasis added)  Actually…no it's not….and avoiding this confusion at trial is why *Daubert* provides the Court with a gatekeeping function. Dr. Klancke admits that his only experience with "drip and ship" treatment is via land-based evacuation, where transport of the patient occurs directly from the stretcher <u>on land</u> to an awaiting aircraft <u>on land</u>. As outlined in Defendant's Daubert challenge (and completely ignored in Plaintiff's Response), Dr. Klancke was specifically asked during his deposition how a "drip and ship" approach could be employed in this particular environment where a "hoist" manuever would be required to deliver the patient into an aircraft hovering above. He could not answer the question, because he does not know enough about how medical evacuations from a cruise ship are performed. He cannot speak to the capabilities of the receiving entity (ie the Coast Guard helicopter) because he has no personal knowledge and did absolutely nothing to investigate. Therefore, how can Dr. Klancke introduce to the jury the concept of a "drip and ship" approach in a maritime environment if he has no idea whether/how it could be done from a cruiseship?

3.      Finally, Plaintiff does not challenge Carnival's assertion that Dr. Klancke volunteered a life expectancy opinion at this deposition that was not offered in either his initial or supplemental expert report. The plain language of Federal Rule of Civil Procedure 26(a)(2) required that Plaintiff produce a written report with a "complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the

witness in forming them." "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." Cooper v. S. Co., 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006). "[T]he expert disclosure rule is intended to provide opposing parties 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for [rebuttal] expert testimony from other witnesses.'" Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir. 2008)(*quoting* Sherrod v. Lingle, 223 F.3d 605, 613 (7 th Cir. 2000). "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel-before the deposition-as to what the expert witness will testify[.]" Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7 th Cir. 2008). Moreover, Rule 26 requires a "detailed and complete report[,]..in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." Ortiz-Lopez v. Sociedad Espanola de Auxiolio Mutuo y Beneficiendcia de Puerto Rico, 248 F.3d 29, 35 (1 st Cir. 2001). There were no reference to the YOUNG-MI study or any clinical studies whatsoever in Dr. Klancke's expert reports for him to "elaborate on" during deposition. In fact, Dr. Klancke didn't opine on life expectancy at all in either of his expert reports. Accordingly, the life expectancy opinion should be stricken on that basis alone. *See* United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru, Case No. 13-CV-21697, 2015 WL 457860, at *2 (S.D. Fla. Feb. 3, 2015); *see also* Mitchell v. Ford Motor Co., 318 F.App'x 821, 824-25 (11th Cir. 2009)(affirming district court's decision to strike expert's report for failing to disclose the bases of his report).

However, even if the Court were to find that Dr. Klancke's reliance upon undisclosed medical literature was harmless, Plaintiff also does not contest Carnival's contention that in order for his opinion concerning life expectancy and eventual need for heart transplant to meet the

evidentiary standard for causation, he must be able to opine that there is greater than 50% chance, as "the mere possibility of causation is not enough." <u>Gooding v. University Hospital Bldg., Inc.</u>, 445 So.2d 1015, 1018 (Fla. 1984). Plaintiff contends that Dr. Klancke "fully supported" his opinions on life expectancy and the need for an eventual heart transplant by pointing to various answers he provided at his deposition, but erroneously argues that he opined that "there is a data set that shows over time he is likely to become somebody who would benefit from either mechanical therapies or a transplant."

Indeed, when specifically challenged on that very point, Dr. Klancke <u>corrected himself</u> by admitting that there is **_no_** data set, as the following exchange more comprehensively reveals:

> Q:      Well, when you say there is no dataset of patients, what are you saying there in layman's terms?
>
> A:      I'm just saying there is a dataset that shows over time he is likely to become somebody who would benefit from either mechanical therapies or a transplant. There's no—
>
> **Q:      Your report says there's no dataset.**
>
> A:      **There is no dataset that says a patient like this is likely or guaranteed to get a transplant, a group of thirty-seven-year-old patients, or thirty-eight or thirty-nine now, with advanced ischemic cardiomyopathy who are undergoing remodeling despite optimal medical therapy that end up with a transplant. I don't know if that percentage if fifty percent or more**. But the report should say you'll reach a point in time where transplant would be a consideration or an option.

Moreover, Plaintiff's recent reliance on Dr. Klancke's vague reference to the YOUNG-MI study during his deposition is still not enough to get him over the evidentiary hurdle. According to Dr. Klancke himself, the YOUNG-MI study only states that "there's a **25% chance** that Plaintiff will be deceased within eleven or ten years." Contrary to Plaintiff's assertions, Dr. Klancke testified that "it is a very individualized decision" and "nobody could predict an absolute time

course" for when a transplant could be needed, or how it could effect his overall life expectancy. [PG 98 LN. 2-10; PG 99 LN 4-20].

## CONCLUSION

For the foregoing reasons, Plaintiff has not and cannot meet his burden of establishing the requirements for admissibility of the proposed testimony are met. Rule 702, Fed.R. Evid. Accordingly, Defendant CARNIVAL CORPORATION respectfully requests entry of an Order granting Motion in Limine to Exclude Certain Opinions and Testimony of Dr. Kim Klancke, MD at trial pursuant to Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993).

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Michael Drahos*
Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
W. Cooper Jarnagin
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
Ashley Genoese
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/Michael Drahos*

**SERVICE LIST**
**CASE NO. 1:24-cv-21295-RAR**

Todd J. Michaels, Esq.
Florida Bar No. 568597
tjm@haggardlawfirm.com
Joshua P. Padron, Esq.
Florida Bar No. 1018674
jpp@haggardlawfirm.com
THE HAGGARD LAW FIRM
330 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154

Philip D. Parrish, Esq.
Florida Bar No. 541877
phil@parrishappeals.com
7301 S.W. 57th Court, Suite 430
South Miami, FL 33143
Telephone: (305) 670-5550
Facsimile: (305) 775-5155

*Attorneys for Plaintiff*